Argued June 2, reversed and remanded July 13, costs retaxed
September 29, 1954

McADAM *v.* ROYCE ET AL. and NAGEL ET AL.

272 P. 2d 986
274 P. 2d 564

248

*Thomas L. Gatch,* and *Lincoln Stuart Ferris,* of Portland, argued the cause and filed a brief for appellants.

*Charles D. Dolph,* of Portland, argued the cause for respondent. With him on the brief were Harvey Karlin and Bruce Y. Curry, of Portland.

Before LATOURETTE, Chief Justice, and WARNER, LUSK and BRAND, Justices.

BRAND, J.

The plaintiff Marie L. McAdam brought an action at law for damages on account of injuries suffered while riding in a taxicab and allegedly caused by the concurrent negligence of the taxicab driver Charles L. Brown and the defendant Robert E. Lee, driver of the car which collided with the taxicab. The defendants Royce were co-partners doing business as the Yellow Cab Company and the defendant Brown was their agent and employee. The defendants Royce will hereafter be referred to as the Cab Company. The complaint also sought judgment against the defendants Gordon V. Nagel and Robert E. Lee by reason of the alleged negligent operation of the car operated by Lee. After two witnesses had testified at length concerning the circumstances of the collision the defendant Nagel, by his counsel, demurred to the complaint and the court granted judgment on the pleadings for said defendant. At the close of the testimony the court dismissed the case as to the defendant Robert E. Lee upon the ground that he was a minor and that no

guardian had been appointed for him. The verdict was in favor of the plaintiff and against the Cab Company and Brown and they appeal. The Cab Company was the owner of the taxicab which was operated in the transportation of persons for hire in the city of Portland. The defendant Brown was driving the taxicab in an easterly direction on Northwest Northrup Street, and it is alleged that on reaching a point in the intersection of that street with Northwest 22nd Avenue, he collided with a car driven by Lee in a southerly direction on Northwest 22nd Avenue. The concurrent negligence of both drivers is alleged. The specifications of negligence against the Cab Company and Brown were as follows: (a) Failing to keep a proper lookout; (b) failing to have their automobile under control, and (c) "in failing to have the cab driven by a competent and careful driver who would have operated the same carefully so as to have avoided said collision." Similar allegations of negligence were made as to the defendant Lee.

The first assignment of error relates to the alleged want of verification of the answer of Nagel and Lee. Under the circumstances this could have had no prejudicial effects as to the defendants Cab Company and Brown. And see 71 CJS, Pleading, § 556.

The third assignment reads: "The court erred in failing to compel the attendance as a witness of defendant Nagel, who had been duly subpoenaed * * *". There is no showing that the defendant Nagel was a witness to the collision or had any knowledge concerning it, and there is no showing that his absence prejudiced the appealing defendant in any way. The record indicates that the court had been informed by counsel in chambers that Nagel had undergone an operation and was unable to attend. The court offered

250

to take the jury to his sickbed and take his testimony there. The offer was refused.

■ We will now set forth the fourth and fifth assignments of error:

> "FOURTH ASSIGNMENT OF ERROR
> "The court erred in failing to decree a mistrial * * * because of the dismissal of defendants Lee and Nagel from the case * * *.
>
> * * * * *
>
> "The court erred in granting a motion for judgment on the pleadings in favor of defendant Nagel * * *."
>
> "FIFTH ASSIGNMENT OF ERROR
> "The court erred in refusing to direct a dismissal for defendants Royce and Brown * * * upon the release of defendants Nagel and Lee from the case * * *."

The third, fourth and fifth assignments all relate to one basic contention of the appealing defendants, which is to the effect that they were deprived of a fair trial because the court dismissed the case against the defendants Nagel and Lee. The Cab Company and Brown concede that the plaintiff could have proceeded against them separately if she had chosen so to do. But they further contend that since the plaintiff proceeded against both sets of defendants in a single action, the dismissal of the case against Nagel and Lee resulted in releasing the defendants Cab Company and Brown.

In support of this contention the defendants say:

> "It is a well-established rule of law that the unconditional release by the party injured of one joint tort-feasor from liability will release all. On principle, as far as a particular trial is concerned, the same rule should apply to an erroneous release by ruling of the trial court."

In attempted support of this position they cite *Murray v. Helferich,* 146 Or 602, 30 P2d 1053, and *Henry v. Condit,* 152 Or 348, 53 P2d 722. Neither of the cases cited supports the defendants' contention, nor we believe, does any other case from any other jurisdiction. The defendants Nagel and Lee were not "released" from liability by the court. The cases against them were dismissed because the court considered the complaint demurrable as to one, and because the court considered that it was without jurisdiction to try the other. Appellants have confused a dismissal and a release. These assignments of error are without merit. See *Lane v. Ball,* 83 Or 404, 160 P 144, 163 P 975; *Furbeck v. I. Gevurtz & Son,* 72 Or 12, 143 P 654, 143 P 922; *Krebs Hop Co. v. Taylor,* 52 Or 627, 636, 97 P 44, 98 P 494.

██ The tenth assignment asserts error in the overruling of defendants' motion for directed verdict. This is one of many cases in which both parties have used blackboard drawings to illustrate the testimony of the various witnesses. The blackboard is not before this court and the record is in such unspeakable confusion that it is impossible for us to know or understand what the witnesses actually told the jury even if the blackboard were here. We are in no better position than if large portions of the testimony had been eliminated from the record. We repeat, and again commend to the consideration of the legal profession what was said in *Birks v. East Side Transfer Co.*:

"* * * Since 'One picture is worth a thousand words,' blackboard drawings are, no doubt, persuasive, but, as is evident from this record, they are ephemeral. A litigant, who surmises that he may wish to appeal in the event that the trial court's judgment is adverse to him, should bear in mind

that when a witness makes short-lived drawings upon a blackboard while giving his testimony, a transcription of the latter may be virtually unintelligible to us. He may thereby sustain a costly loss. This court, in previous decisions, has pointed out the disadvantages under which we study a record when places are located during the trial upon maps or plats and the record upon appeal fails to indicate the spots to which reference was made when the witness spoke of 'here' and 'there'. See Ervast v. Sterling, 156 Or 432, 439, 68 P2d 137, and Oregon precedents therein cited. See, also, State v. Morrow, 158 Or 412, 75 P2d 737, 76 P2d 971." Birks v. East Side Transfer Co., 194 Or 7 at 38, 241 P2d 120.

The second assignment relates to this same subject. It reads as follows:

"The court erred in not granting the request of defendants Royce and Brown to have the markings on a black board that was extensively used by a witness (and by following witnesses) put upon paper so as to have a record that could be preserved * * * and in refusing to permit a witness to indicate by marking upon a exhibit the skid marks he was talking about * * *."

The photographic exhibits demonstrate that the taxicab was struck on the left side at and over the left rear wheel, by the front of the Lee car. At the request of counsel for plaintiff, and without objection being made, officer Magness made a drawing upon the blackboard. As a part of the drawing he indicated skid marks of the southbound Lee car, which he said were 22 feet in length. He placed the point of impact "approximately here (indicating)." The witness was asked to demonstrate the skid marks and the record recites, "(witness so demonstrates). There was several that appeared that way. (Demonstrating) that

was leading up to this car that were unmeasurable."
The record continues:

"A * * * There was starting back in here —
— — (indicating) — — — —
"Q Make those dotted lines.
"A (Witness so marks.)
* * * * *

"Q Yes. And how about the cab company, the
cab, what were the skidmarks there? Did you
measure it?
"A It was side skids from the tires going — —
they started from coming out at an angle like this.

There is jumps in them."

Speaking of the skid marks which the witness pre-
sumed to be those of the taxicab, he said:

"* * * It was from this point here toward
the rear tire, mostly. What I would presume to
be the rear tire, it went from just shortly back of
this point of the impact over to where the tires
were, but they — — there were jumps, (indicating
throughout)."

The witness sketched a house, apparently located at
the northwest corner of the intersection, a matter of
some importance in determining the existence of a
blind corner at that point. Speaking of the house,
he stated that it was 15 feet back of the curb, but
failed to state whether he referred to the curb on
Northrup Street or on 22nd Avenue. He then described
the location of some trees at that corner "(indicating
throughout)." The testimony continued in similar
vein—or in vain. After the drawing had been made
and additional testimony had been given, counsel for
the appealing defendants said:

"Mr. Ferris: Now, if your Honor please, I would
like to have permission to have that put upon some-

thing that can be transported. I don't want to be dilitory, but I should like to have permission to have it put upon some papers so that we can preserve the record of it, (indicating the sketch on the blackboard.)''

Thereafter counsel for the defendants said: ''I will withdraw the offer.'' The assignment is without merit. We are constrained to say, however, that the circuit court cannot be expected to provide a new blackboard for every automobile damage case so as to permit counsel to transport the one which has been used to this court as an exhibit. Counsel recognized that fact. The plain implication is, that if counsel desires to present an intelligible record to this court he should, in the first instance, insist upon employment of a suitable sheet of paper, one as large as the blackboard, if necessary. Sketches drawn by witnesses should be made on such paper, and identifying marks should be placed thereon and referred to in the oral testimony. It is not unlawful to use a blackboard to illustrate the testimony of a witness, but counsel contemplating the possibility of appeal may meet with defeat if he uses it or fails to follow the suggested procedure, or if he clutters the transcript with testimony as to what happened ''here'', ''over there'', etc., without making it plain where ''here'' and ''there'' are located on the drawing. We are advised that some of the trial courts have already adopted the suggested procedure. We believe others will approve it, and that in proper cases they are empowered in their discretion to require it.

The second assignment claims error in the refusal of the court to permit officer Magness to place his initials upon a photograph ''beneath the end of each of those skidmarks''. We are not even able to ascertain to which photograph counsel referred. The court

made no positive ruling and counsel for the defendant apparently acquiesced.

■ We have already noted that the plaintiff's complaint included as one of the specifications of negligence on the part of the Cab Company the failure to employ a competent and careful driver. We have examined the testimony with care and find no evidence to support this specificiation of negligence. The appealing defendants requested the court to instruct the jury as follows:

> "You will disregard plaintiff's claim that defendants Royce were negligent in that they failed to have said taxicab driven by a competent and careful driver on the grounds that for the reason that there is no evidence to support this claim."

The court refused so to instruct and the defendants assign error. Not only did the court fail to withdraw this specification of negligence from the jury, but it affirmatively instructed the jury concerning the allegations of negligence by the defendant Lee in part as follows:

> "They further state negligence of the defendants * * * in failing to yield the right-of-way to the automobile in which plaintiff was a passenger; operating their automobile on the left-hand side of the highway; and permitting defendant Robert E. Lee to be entrusted with the driving of an automobile when he was incompetent to drive said automobile.

> "Complaint further states that the defendant Brown was negligent in failing to keep a proper lookout for traffic at said intersection and particularly for the automobile being driven by defendant Robert E. Lee; in failing to have their automobile which they were operating under proper or any control; in failing to have the cab driven by a competent and careful driver who would have oper-

ated the same carefully so as to have avoided said collision."

The failure to withdraw the issue of incompetence was error and it was emphasized by the instructions to the jury concerning the plaintiff's claims upon that issue. The error is further emphasized by the instruction immediately following the one last quoted which states the plaintiff's claim that "the negligence referred to was the proximate cause of said collision * * *."

■ In view of the general confused state of the record, we think the court committed serious and prejudicial error. Other considerations lead to the same conclusion. The transcript which is certified as full, true, and accurate by two "official reporters pro tem" and as true and correct by the trial judge, is binding upon us, notwithstanding the fact that the appealing defendants have set forth a "Glossary of Errata" enumerating over fifty alleged errors and setting forth the "correct reading or believed likely correct reading" in parallel columns. We quote one paragraph of the instructions as certified:

> "Subject to the instructions of the Court, you are the judges of the credibility of the witnesses and of the value and effect of the evidence. Your judgement of the evidence put before you is not to be judged arbitrarily but should be judged with legal discretion of the rules given you and insubordination to the rules of evidence, with any number of witnesses which do not produce conviction in your mind as against legal presumption or other evidence which does satisfy your mind."

We are loathe to believe that the transcript correctly states what was said, but if it does not, there should be a showing to that effect.

■ In its instructions the court first stated to the jury the charges of negligence against the defendants Nagel and Lee and referred to the allegations of negligence "of the defendants" without specifying which group of defendants was intended. It was only after lengthy instructions of this kind that the court advised the jury that the defendants Nagel and Lee "are no longer in the case." Exception was taken to the instruction given concerning Nagel and Lee and we think they should not have been given. The appealing defendants made a belated request that the court instruct the jury in effect that the dismissal of the case against Nagel and Lee was exclusively the result of procedural law and was not to be taken as indicating any opinion of the court that they were or were not at fault. The trial court invoked a rule of the circuit court as his reason for refusal to give the instruction. Without commenting upon the applicability of the rule, we think it unfortunate that the substance of the instruction was not given.

The second witness called by the plaintiff concerning the circumstances of the collision was the defendant Brown, the driver of the taxicab. This, the plaintiff had a right to do, the obvious purpose being to support a case against defendants Nagel and Lee. But when the latter were dismissed from the case, it left the plaintiff burdened with the adverse testimony of the only person whose conduct, if negligent, could have supported a verdict against the defendant Cab Company.

For the benefit of the profession we observe that there was a large amount of matter included in the abstract of record which had no place there.

The judgment is reversed and a new trial ordered.

Submitted on plaintiff-respondent's objection to defendants'-appellants' cost bill.

*Thomas L. Gatch,* and *Lincoln Stuart Ferris,* of Portland, for the appellants.

*Charles D. Dolph, Harvey Karlin* and *Bruce Y. Curry,* of Portland, for respondent.

BRAND, J.

█ The defendants-appellants having prevailed upon their appeal have filed a cost bill to which the plaintiff-respondent makes objections. Defendants assert a claim for $10.08 paid to the railway express agency for transportation of the documents to this court. The objection to this item is sustained. *Menefee v. Blitz,* 181 Or 100, 143, 179 P2d 550.

█ Objection is made to the allowance of the amount of $103.90 paid to a surety company for the undertaking on appeal for two years. It was necessary that the stay-bond filed by the appellants should be sufficient to cover the amount of the judgment below plus a reasonable sum to cover costs and disbursements in this court in the event that the appeal should be unsuccessful. The amount of the judgment below was $2,597.30 plus costs and disbursements in the amount of $66.15. We think it was reasonable that the bond should have included an additional sum of $500.00 to cover possible liability for costs and disbursements in this court. Appellants were entitled to secure a bond for the amount of $2,597.30 plus $66.15 plus $500.00. The sum of the three items is $3,163.45. They are entitled to charge one per cent a year upon that amount for two years, or a total of $63.26. The item claimed in the cost bill is $103.90. The objections thereto are

sustained and that item is retaxed at $63.26. *Barbour v. Johnson*, 201 Or 375, 270 P2d 633; ORS 747.100. The cost bill contains an item of $158.00 for the expense of printing the Abstract of Record to which objection is made upon the ground that 46 pages of the Abstract of Record contain matter which had no proper place in the Abstract.

Because of the importance of this matter to the legal profession we will express our opinion as to the specific objections.

■ The answer of the defendants Nagel and Lee is reproduced in the Abstract. Motion for judgment on the pleadings was granted by the trial court as to the defendant Nagel and the case against Lee was dismissed for want of jurisdiction, he being a minor without a guardian. No appeal was taken by the plaintiff and neither Nagel nor Lee were parties to the appellate proceedings. The answer had no place in the Abstract.

■ One page of the Abstract is consumed in setting forth the verification of the answer and the certificate of service therefor. The insertion of this matter was improper. The Abstract sets forth the text of the alias summons and the return of service of the sheriff showing service upon Lee and Brown. Both defendants had appeared and answered. It was improper to encumber the record with this matter. A "Trial Summary" made by the trial court was included in the Abstract. This also was unnecessary.

■ The Abstract sets forth verbatim the original complaint as well as the amended complaint. The text of the original complaint was in this case unnecessary for a full understanding of the questions for decision. It was improperly included in the Abstract. *Albert v. Salem*, 39 Or 466, 65 P 1068, 66 P 233. The Abstract sets forth a subpoena and return of service on the de-

fendant Nagel which had no place in the printed Abstract. The instructions requested by defendants Nagel and Lee were improperly included in the printed Abstract. "The Memorandum of Law" had no proper place in the Abstract of Record. Two letters to the trial judge which referred to a motion in arrest of judgment and to the withdrawal thereof were improperly included in the Abstract. A motion for judgment notwithstanding the verdict was set forth. The motion was not well taken, but we think it was not inserted with frivolous intent. An affidavit of counsel supporting the motion for judgment n.o.v. contains a narrative of events at the trial which could be ascertained from the pleadings and transcript of evidence. The affidavit was improperly included in the Abstract.

In an effort to aid the court, two pages of alleged "errata" in the transcript were set forth in the Abstract. The difficulty is that this court was bound by the certified transcript. The errors might perhaps have been suggested in the briefs if they were apparently typographical, but the errata had no place in the Abstract. The Abstract contains the text of "supplemental instructions" requested by Brown and Royce and a photostatic copy of clerk's entries before appeal. Neither of these matters belong in the printed Abstract, but no objection was made to their inclusion.

The last objection to the cost bill is directed against the printing in the brief of 10 pages thereof which are addressed to the third assignment of error. It is asserted that the matter presented was frivolous. The contentions made were certainly not well taken, but we believe they were made in good faith. The same is true concerning three pages of the brief which were directed to the ninth assignment of error. We find that

at least 41 pages of the printed Abstract contain matter which was improperly included therein.

The claim of expense in printing the Abstract should be reduced by the sum of $82.00. Costs are retaxed as follows:

| | |
|---|---:|
| Trial Fee | $ 6.00 |
| Clerk's Fees, appearance | 20.00 |
| Prevailing Costs | 15.00 |
| Transcript & Abstract on Appeal, paid court clerk | 20.65 |
| Transcript of Testimony (paid to Charles Goodale-Waits, reporter) | 182.10 |
| Premium (paid St. Paul-Mercury) on Undertaking on Appeal, 2 yrs. at $31.63 | 63.26 |
| Printing required: Abstract of Record, 38 pp incl. index and cover at $2.00 | 76.00 |
| Appellants' Brief, 71 pp in all | 142.00 |
| Reply Brief, 30 pp in all | 60.00 |
| | $585.01 |

This is a suitable occasion to call attention to the rule of this court as adopted 31 March 1954 and which provides that the printed abstract shall contain

"so much of the matters of record referred to in section 3 of this rule as may be necessary to a full understanding of the questions presented for decision * * *. Care should be exercised to eliminate averments and other matter immaterial to an adequate understanding of the cause. A copy of the circuit court's opinion may be printed in the abstract. If this be not done either party may include a copy of the opinion in his brief as an appendix thereto."